

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-2005

# Watkins v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3266

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Watkins v. Comm Social Security" (2005). *2005 Decisions.* Paper 1253.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1253

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3266

———

YVONNE WATKINS
o/b/o Roland Offley

v.

COMMISSIONER OF SOCIAL SECURITY

Yvonne Watkins,
Appellant

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 01-cv-04351
District Judge:  The Honorable William J. Martini

———

Submitted Under Third Circuit LAR 34.1(a)
April 7, 2005

———

Before: BARRY, AMBRO, and GREENBERG, Circuit Judges

———

(Filed:  May 3, 2005)

———

OPINION

———

BARRY, Circuit Judge

This is an appeal from a final order of the United States District Court for the District of New Jersey affirming the decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied the application filed by Yvonne Watkins ("Watkins") on behalf of her grandson, Roland Offley ("Roland"), for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. The primary issue raised in this appeal is whether substantial evidence supports the conclusion that Roland is not disabled.

## I. BACKGROUND

Because we write only for the benefit of the parties, we will limit our discussion to those facts bearing directly on our disposition of this appeal. The District Court had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291. We must affirm the District Court if it correctly found the decision of the Commissioner to be supported by substantial evidence. 42 U.S.C. § 405(g); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones*, 364 F.3d at 503 (internal quotations omitted).

Watkins initially filed an application for SSI benefits on her grandson's behalf. The application claimed that Roland was disabled due to asthma, residual lead poisoning, and disruptive behavior. This application was denied twice. After the second denial,

Watkins requested and received a hearing before an Administrative Law Judge ("ALJ").

20 C.F.R. § 416.924(a)-(d) sets out the three-step sequential analysis for determining child disability. Under this analysis, a child is deemed disabled if: (1) he or she is not working and not engaged in substantial gainful activity; (2) he or she has a medically determinable impairment that is severe; and (3) the medically determinable severe impairment meets, medically equals, or functionally equals a listing ("Listings") in 20 C.F.R. Part 404, subpart P, Appendix 1. The ALJ found, and the parties do not dispute, that Roland was not working and that his attention deficit hyperactivity disorder ("ADHD") and speech/language delay were medically documented and amounted to a severe impairment.[1] The ALJ, therefore, concluded that the first two prongs of § 416.924 were satisfied.

The ALJ next examined whether Roland's severe impairment satisfied § 416.924's third prong. To determine if a child's ADHD meets or equals the Listings, it must be shown that that medically documented condition results in marked limitations in at least two of the following four categories:[2] (1) age-appropriate cognitive/communicative functioning; (2) age-appropriate social functioning; (3) age appropriate personal functioning; and (4) difficulties in maintaining concentration, persistence, or pace. *See* 20

---

[1]The parties seem to agree that Roland's asthma and residual lead poisoning do not rise to the level of severe impairments.

[2]The child may also satisfy this requirement by showing an extreme limitation in one category. Roland does not contend that he has an extreme limitation in any category.

C.F.R. Part 404, subpt. P, app. 1, part B § 112.11. A child has a marked limitation when his or her impairments seriously interfere with the ability to independently initiate, sustain, or complete activities. *Id.* at § 112.00(C).

The ALJ found that the record did not document the level of severity required by § 112.11(B), and specifically noted those areas in which evidence was lacking. The ALJ, therefore, concluded that Roland's impairment did not meet or equal the criteria of any impairment described in the Listing of Impairments of Appendix 1.

If a child's impairment (or combination of impairments) does not meet or medically equal the severity of an impairment contained in the Listings, the Commissioner must then assess whether the impairment is "functionally equivalent" to a listed impairment. *See* 20 C.F.R. § 416.926a(b). In order to assess functional equivalence, as relevant here the Commissioner was required to consider Roland's age and evaluate the effect of his impairment in several broad areas of development or functioning. For the impairment to functionally equal "listing-level" severity, it must result in marked limitations in at least two of the following areas of functioning: cognitive/communicative; social; personal; and concentration, persistence and pace. *See* 20 C.F.R. 416.926a(c)(4) (2000). The ALJ found that Roland's impairment was not functionally equivalent to an impairment contained in the Listings because Roland either had no limitation or, in those areas where he did have a limitation, that limitation was less than marked. Accordingly, the ALJ concluded that Roland was not disabled.

## II. DISCUSSION

Relying on *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981), Roland argues that the ALJ failed to articulate an evidentiary basis for his conclusion that Roland's cognition/communication, social functioning and concentration limitations were "less than marked" and did not meet or medically equal the criteria of Listing §112.11(B). Contrary to this assertion, the ALJ did point to specific evidence that supported his conclusion – in particular, that Roland's teacher reported he had no problems with articulation, he was generally able to complete tasks assigned, and he had no problems with gross motor coordination.

Moreover, as the District Court correctly observed, the ALJ's opinion discussed in detail whether Roland has a "broad functional limitation." Because the analysis required to see if there is a broad functional limitation essentially mirrors the analysis under § 111.12(B), the ALJ did, in fact, provide an adequate explanation for why Roland's impairment did not meet or medically equal any of the Listings.

Roland argues, next, that substantial evidence shows that he has marked cognition/communication, social functioning and concentration limitations that "functionally equal" the Listings. He points to his score in the tenth percentile in expressive communication, his school reports that do not indicate that he is "making progress in the social sphere," and the fact that the ALJ failed to address contrary evidence of his "marked concentration" deficit. Roland concludes by observing that the

5

ALJ's refusal to address such contradictory evidence is not "merely [a] *Cotter* violation, [but is a] *Cotter* outrage." Brief at 12.

We disagree. The ALJ observed that the only evidence indicating that Roland may have a marked limitation in expressive communication was scoring in the ninth and tenth percentile in auditory comprehension and expressive communication tests, and being classified in pre-school as having deficits in language and speech. Section 416.926a(e)(4)(I) states, however, that no single piece of information can in isolation establish that a child has a marked limitation. Rather, the ALJ is to consider test scores together with other information, such as classroom reports, to see if the "child's functioning in day-to-day activities is not seriously or very seriously limited by [his] impairments."§ 416.926a(e)(4)(ii)(B).

The ALJ concluded that Roland does not have a marked limitation in expressive communication for the following reasons. First, a State agency physician who evaluated him opined that while he has a moderate limitation in cognitive functioning, no evidence existed that he had a marked communicative limitation. Second, Roland's teacher reported that he had no problems with articulation. Third, Roland's cognitive abilities, according to a Stanford Binet test, are average. Finally, a speech pathologist reported that his "speech intelligibility was good to fair in all contexts." App. at 127.

With reference to Roland's argument that substantial evidence does not support the ALJ's conclusion that he has a less than marked limitation in social functioning, the ALJ

noted that the only evidence suggesting Roland is struggling socially was his grandmother's testimony that he has problems with other children at school. This testimony was, however, called into question by Roland's teacher, who stated that he has made progress in socialization, has made friends, and was engaging in a level of activity typical for a four-year old.

Roland's final argument is that he has a marked limitation in concentration because his ADHD "prevents him from mustering the requisite concentration to perform at anywhere near his grade level." Brief at 9. He also contends that the ALJ failed to address his teacher's claim that he has an attention span that "is extremely short." *Id.* at 10. While the ALJ did not cite this particular evidence, he did observe that Roland has "moderate (less than marked) limitations in the function of <u>concentration, persistence, and pace</u>." App. at 15 (emphasis in original). Moreover, while Roland's ADHD has caused him to have difficulty concentrating, the ALJ noted that Roland does not take his prescribed Ritalin. Indeed, he noted that, even without the medication, Roland, according to his teacher, has made progress in school and is now capable of completing tasks that he is asked to perform. Accordingly, substantial evidence supports the ALJ's conclusion that Roland's concentration problems are less than marked – his "day-to-day activities [are] not seriously or very seriously limited by [his] impairments."§ 416.926a(e)(4)(ii)(B).

## III. CONCLUSION

For the reasons discussed above, we will affirm the order of the District Court.